STATE WATER COMMISSION *v.* CITY OF NORWICH

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued June 8—decided July 7, 1954

*Allyn L. Brown, Jr.,* with whom was *Orrin Cara-shick,* for the appellant (defendant).

*Raymond J. Cannon,* assistant attorney general, with whom, on the brief, was *William L. Beers,* attorney general, for the appellee (plaintiff).

WYNNE, J. Acting under the authority of chapter 195 of the General Statutes, the state water commission, after hearing, entered a finding and order affecting the city of Norwich. It was served on August 1, 1951, and ordered the city to take steps to construct a sewage treatment plant, at an estimated cost of $1,830,000, to eliminate alleged pollution of the Yantic, Shetucket and Thames Rivers in accordance with certain plans approved by the commission. Pursuant to § 1605c of the 1953 Cumulative Supplement to the General Statutes, the order incorporated the time limitations for the various steps to be taken, culminating in the completion of the project by a specified date in 1957. No appeal as provided by statute was taken from the order, and there has been no compliance with any of the preliminary steps specified. In the situation thus presented, the state water commission brought an action to the Superior Court by writ dated April 27, 1953, seeking an "appropriate decree or process" to enforce its order. The commission purported to act under authority of § 1605c. The city attempted to raise by special defenses the claim that the initial order was unreasonable, but a demurrer to these de-

fenses was sustained. Thereafter a judgment was entered which, in effect, set a new date for the taking of the preliminary steps for the launching of the project and ordered the city thereafter to proceed with diligent dispatch to construct and complete the sewage treatment plant as detailed in the order of the commission dated July 30, 1951, and served on the city August 1, 1951. From this judgment the city has appealed.

The defendant has framed the issues presented by its assignment of errors as follows: (1) Upon the complaint of the commission asking for a decree enforcing its order, does the Superior Court have the power to render a judgment changing, modifying or revising the order? (2) Can the court enforce the order when the time for its performance as established by the commission has passed? (3) Is the judgment entered by the court responsive to the relief sought? (4) Can the defendant still raise the question of the reasonableness of the order?

The first issue goes to the very heart of the case. It could be briefly disposed of by sustaining the plaintiff's claim that the question of the power of the court to issue the decree was not raised in the court below and cannot be considered now. Practice Book §§ 409, 154; *Maruca* v. *Phillips,* 139 Conn. 79, 82, 90 A.2d 159. The court stated in its memorandum of decision that the question to be decided was whether to "issue an appropriate order of enforcement to carry out the police power of the State." The point involved is of great public interest, and we shall consider it although it may not be technically before us. Section 1605c of the 1953 Cumulative Supplement gives the commission the power to apply to the Superior Court for an "appropriate decree or process" to enforce the commission's orders

concerning the elimination of pollution. The decree issued by the court was that the defendant obey. The court modified the order, however, by extending the time within which the defendant was required to comply. The defendant claims that this modification accomplished a material change. In passing, it is only fair to state that this change was to the advantage of the defendant and was made because the date for performance as set by the commission had already gone by. For that reason the defendant is hardly in a position to complain. But, be that as it may, the fundamental issue is whether the court had the power to make the change. The defendant claims that it did not because it could not assume administrative functions and the change in the dates for compliance was the exercise of an administrative, not a judicial, function. The defendant argues that the statute does not confer any such power.

It is true that the courts cannot exercise administrative functions even if the legislature attempts to confer specific power upon them to do so. *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 592, 37 A. 1080, 38 A. 708; *Spencer's Appeal,* 78 Conn. 301, 307, 61 A. 1010. However, it is the apparent intent of the statute before us to confer upon the courts broad equitable powers, not administrative powers. The words used are that the Superior Court may issue an "appropriate decree or process." This means simply that the court has the power to attach to the decree such conditions as it may, in its discretion, find necessary to the adequate enforcement of the order. It is logical to assume that the legislature intended that the court should have the power to act effectively and not that it should issue a useless, unworkable decree. If the court is powerless to change the dates for compliance with the commis-

sion's order, anyone to whom an order was issued could flout it by standing idly by, without taking an appeal under General Statutes, § 4044, waiting until the time for conformance was past. It might be contended that the statute contemplates that the commission should apply to the court in advance of the time for compliance set in its order. If this were so, it would put the commission in the position of having to anticipate that every municipality to which an order was directed would ignore it. The commission has the right to expect just the contrary.

The change of the dates for compliance was not a material change. It was one necessary, in the exercise of the discretion of the court, to make its order and decree appropriate and effective. Even if it be conceded that it was close to the borderline between an administrative and a judicial function, nevertheless it was well within the area of the latter. *Malmo's Appeal,* 72 Conn. 1, 5, 43 A. 485; *Norwalk* v. *Connecticut Co.,* 88 Conn. 471, 476, 91 A. 442; see *Connecticut Light & Power Co.* v. *Southbury,* 95 Conn. 88, 95, 111 A. 363; 14 Am. Jur. 391, § 197. Municipalities are the creatures of the legislature. They are as amenable to it and to the courts as any private corporation or individual. They are subject to equitable powers properly exercised by the courts. *Connelly* v. *Bridgeport,* 104 Conn. 238, 252, 132 A. 690; *Commonwealth* v. *Hudson,* 315 Mass. 335, 344, 92 N.E.2d 566.

In the present case the court did not change, modify or revise the essence of the order of the commission. The times set in the order were not of the essence thereof. The court simply adopted the original order and gave the city additional time within which to comply.

The legislature has given to the Superior Court

the power to enforce the orders of the commission by an appropriate decree or process. By necessity, such a decree would have to operate prospectively and could not properly enter until there was a default, as here, on the part of a party to an order properly entered and promulgated. There is no basis in the record for the claim that the court attempted to modify an order of the commission and thus usurped administrative power. The court only made necessary changes in the dates specified for taking steps, where the dates had expired by passage of time. The rendition of the judgment was the exercise of a judicial function, just as the issuance of any injunction compelling the performance of an obligation imposed by law is. The effect was to give judicial sanction to an otherwise legal order of the commission.

As to whether the defendant could raise in this proceeding the question of the reasonableness of the commission's initial order, it is sufficient to state that § 4044 of the General Statutes provides for an appeal to the courts upon "the reasonableness and expediency of such order, so far as said court may have cognizance of such subject." Proper procedure required the defendant, if it decided to raise the question of reasonableness, to avail itself of this opportunity for an appeal. Having failed to do so, it cannot now be heard to complain about the reasonableness of the order. See *Chicago* v. *O'Connell*, 278 Ill. 591, 608, 116 N.E. 210; 42 Am. Jur. 671, 580, 573. The demurrer to the special defenses raising the issue of reasonableness was properly sustained. The issues whether the judgment was responsive to the relief claimed and whether the court could enforce the order after the time set by the commission for performance of it was past require no discussion.

They are disposed of by the view we have taken upon the main issue of the case.

There is no error.

In this opinion INGLIS, C. J., BALDWIN and DALY, Js., concurred.

O'SULLIVAN, J. (dissenting). I am unable to accept the conclusion reached by my associates.

The case at bar presents a statute prescribing a judicial procedure which, so far as I have been able to ascertain, is unprecedented in this state. General Statutes, Cum. Sup. 1953, § 1605c. The statute first authorizes the state water commission to issue an order directing any person, firm or corporation to install a system aimed at the elimination of pollution of waters of the state. "Such order," it continues in part, "shall specify the particular system or means to be used or operated. . . . Such order shall specify the time within which such system or means shall be used or the operation thereof shall be commenced and such time may be extended by the commission upon application made to it by the person, firm or corporation to whom such order shall have been issued and any such order may, upon application, be modified by the commission in any other particular not inconsistent with the provisions hereof. . . ." Then follows the only provision authorizing action by the court: "The commission may cause the enforcement of any order issued by it to reduce, control or eliminate pollution of any water, by application to the superior court . . . to enjoin any person, firm or corporation from continuing such pollution, or in the case of a municipality, . . . to issue an appropriate decree or process. . . ." The court, to which the plaintiff commission made its application, could exercise only the authority con-

ferred upon it by the General Assembly. It could go as far as the statute permitted and no further. The pertinent provision is that the Superior Court may "issue an appropriate decree or process." But the objective for such a decree or process is to enforce the order of the commission. There is nothing in the statute which empowers the court, first, to modify the order and, thereafter, to issue a decree to enforce it as modified. The court obviously went beyond the authority which the legislature granted and, consequently, its action in so doing was invalid.

What the commission should have done, but failed to do, was this: Directly after the expiration of the time set by General Statutes, § 4044, for the defendant to seek a judicial review of the reasonableness of the order, the commission could have applied to the Superior Court for an appropriate decree to enforce the order. The majority, taking the view that this course was not available to the commission, say: "It might be contended that the statute contemplates that the commission should apply to the court in advance of the time for compliance set in its order. If this were so, it would put the commission in the position of having to anticipate that every municipality to which an order was directed would ignore it." But that was exactly the reason why the General Assembly created the novel judicial procedure set up in the statute.

The majority, I fear, have forgotten the history of pollution in this state and the attitude of cities and towns toward measures adopted to terminate it. Because of the financial burden which would follow upon the acceptance of their share of the effort necessary to eliminate their contribution to pollution, municipalities have been not only indifferent but actually antagonistic to the state program.

450

Several of them have used dilatory tactics and placed obstacles in the way in order to avoid co-operating with the state authorities. Indeed, in many instances, the commission has been looked upon as an administrative agency that had to be tolerated but not followed. To avoid the effect of this improper attitude, the General Assembly put real teeth into its enactment. It permitted the commission to assume, contrary to the holding of the majority quoted above, that municipalities would not obey its orders—as had happened previously—and, upon that assumption, to obtain a judicial decree, compelling performance, before default occurred. The application made by the commission in the case at bar came too late.

The foregoing reason is ample to justify my dissent. This makes it unnecessary to decide whether the action of the court was invalid for the further reason that, even if it is conceded that the legislature authorized the court to modify the commission's order, the statutory provision was invalid as the imposition upon the judiciary of an administrative function. *State* v. *Stoddard,* 126 Conn. 623, 627, 13 A.2d 586.